[Civ. No. 12399. First Dist., Div. One. June 28, 1943.]

GEORGIANNA KEISTER, a Minor, etc., Appellant, v. F. H. O'NEIL, Respondent.

Peterson & Ott and Charles Reagh for Appellant.

Robert L. Lamb and A. Dal Thomson for Respondent.

KNIGHT, J.—Plaintiff appeals from an adverse judgment based on the verdict of a jury in an action for damages. There is no claim made that the evidence is insufficient to support the verdict or judgment, but it is urged that the court erred in giving and refusing to give certain instructions and in ruling on the admissibility of evidence. We are of the opinion that no grounds for reversal have been established.

The parties sued were the respondent, a regularly licensed and practicing physician and surgeon, and a corporation operating a general hospital. The complaint contained three counts, the first of which was directed against the hospital. In substance it was alleged therein that respondent agreed to and did perform an operation on appellant for the removal of her appendix, and that immediately following the completion of the operation the hospital employees, acting under orders from respondent, administered a hypodermic injection of glucose into her body, and in doing so negligently broke off the hypodermic needle in her left thigh; that as a result of the negligence of the hospital employees it became necessary for respondent to remove the needle; that because of the negligence of the hospital employees appellant will suffer great physical pain and mental anguish; "that the negligence and carelessness of the defendant, corporation as aforesaid was the proximate cause of the injury to plaintiff," by reason of which she sustained general damages in the sum of $10,000. The second count was directed against the hospital and respondent. Substantially the same allegations were made against the hospital as were made in the first count, and the basic allegation of the cause of action against respondent was that in operating to remove the needle he used a spinal anaesthetic without the consent of appellant or anyone authorized to act in her behalf, and that the operation left an unsightly and disfiguring scar on her left thigh; and she asked for $5,000 special and $10,000 general damages. The third count was directed also against respondent and the hospital. The allegations thereof were that before performing the operation for the removal of the needle respondent and the hospital failed to make a thorough examination to ascertain correctly the location of the broken needle; that as a result of such failure an unsightly and disfiguring scar was left on appellant's left thigh, for which she asked $5,000 special and $10,000 general damages.

Respondent and the hospital answered, putting in issue all of the material allegations of the complaint, and the cause was brought to trial before a jury. However, on the second day of the trial appellant filed a dismissal of the action against the hospital. Thus it will be seen that when the cause was submitted to the jury it was called upon to decide two main issues of fact; first, whether under the second count respondent used a spinal anaesthetic without appellant's consent, and if so, whether any damage resulted therefrom; secondly, whether under the third count respondent before operating to remove the needle failed to make a thorough examination to locate the needle, and if so whether any damage resulted therefrom.

Nowhere does appellant claim that the operation to remove the appendix was not necessary or that it was not skillfully or successfully performed; nor is it claimed that it was not necessary to administer the hypodermic injection following the operation; furthermore no claim is made that it was not necessary to remove the needle, or that respondent was not authorized to do so. Moreover, all of the points urged for reversal pertain solely to the second count, so that it may be taken as conceded not only that the evidence is sufficient to support the jury's finding as to the third count, but also that no error was committed in the trial of the action with respect thereto. Therefore no further consideration need be given to the charge made therein that respondent failed to make a proper examination to locate the needle before operating to remove it, or that appellant suffered any damage resulting from such alleged failure.

Confining ourselves, therefore, to the second count, the appeal narrows down to these questions: (1) whether respondent administered the spinal anaesthetic without the consent of appellant or anyone authorized to act for her; (2) if so, whether any damage resulted from the use thereof; (3) whether in the trial of those issues the trial court erred in instructing the jury or in ruling on the admissibility of evidence. The essential facts are these: Appellant was 17 years old, married, and with her husband, aged 19, was living in Eureka with his mother, who is the guardian ad litem herein. On October 11, 1940, after having been married but a week, she was taken ill, and her husband summoned respondent, who made a tentative diagnosis of appendicitis, and directed

that if her condition did not improve by midnight she should be taken to the hospital for operation. Early the next morning she was taken to the hospital by her husband, and there they signed a written "authority to operate" consenting "to the administration of whatever anaesthetics and the performing of whatever operations may be decided to be necessary or advisable . . ."; thereupon respondent successfully operated to remove the appendix, using a general anaesthetic of ethyl chloride and ether. Because of the position of the appendix the operation consumed an unusually long time; and after it was completed, the respondent directed that appellant be given a hypodermaclysis—that is, an injection of normal saline solution, which is injected into each thigh by means of long steel needles attached by tubing to a container of the solution. As was the custom the hypodermaclysis treatment was administered by a nurse after appellant was taken back to her room from the operating room. A few minutes later the nurse in charge noticed that the fluid was draining too rapidly out of the container. She called assistance, and on further examination it was discovered that the needle in appellant's left thigh had broken off. Respondent was called and informed of the breaking of the needle, and he returned immediately to the hospital. He took X-rays and attempted to remove the needle, but appellant was then coming out of the anaesthetic and he concluded to abandon the attempt for the time being. That night he told appellant's mother-in-law about the needle and the necessity of removing it later. She agreed with respondent that it would be best not to inform appellant of the necessity of another operation, and the following Saturday, a week after the appendectomy, respondent operated to remove the needle, giving the patient a spinal anaesthetic. Additional X-rays were taken first to determine the location of the needle, and with the use of a fluoroscope in the X-ray room and after some difficulty it was found deeply imbedded in the muscle beneath the facia, and was removed. Appellant recovered without any apparent trouble from both operations, and was taken home the following Tuesday.

As to the question of whether the spinal anaesthetic was administered without lawful authority, the evidence is in direct conflict. Appellant's mother-in-law testified that she told respondent on the evening prior to the appendicitis

operation that she "absolutely did not want her given a spinal anaesthetic" and that respondent said it would not be necessary. Appellant's husband testified that he heard his mother's request and that he too stated to the doctor that he was not to use a spinal anaesthetic. The mother also testified that the respondent assured her that it would not be necessary to use a spinal anaesthetic to remove the needle, that he would just give her a shot of novocaine in the thigh. As opposed to the foregoing testimony, respondent denied that there was any discussion of or conversation about anaesthetics before either operation. In this regard he stated that the only remonstrance about the use of a spinal anaesthetic was after the operations when he went to appellant's home to remove the stitches, at which time either appellant or her mother-in-law stated that they would have opposed the use of a spinal anaesthetic had they known it was to be employed. There was also testimony that it would have been inadvisable to give a general anaesthetic to remove the needle because the operation was to be performed under a fluoroscope in the X-ray room, and general anaesthetics being inflammable, there is considerable danger of fire in using them in a room where electrical equipment such as X-ray is being used; also that it was inadvisable to give a general anaesthetic for the further reason that plaintiff had been recently operated on for appendicitis, and such anaesthetics may produce nausea and vomiting, which would cause distention in a fresh wound. Respondent also testified that the operation could not have been performed safely by injecting novocaine locally, because the quantity required would have so affected the tissues as to produce "sloughing" in the field of the operation.

In any event, there is no showing whatever of the existence of any consequences from the use of the spinal anaesthetic which would justify an award of damages. Appellant made no attempt at such showing, other than to testify as to her health before the appendectomy and her alleged present physical condition; but she offered no testimony whatever to show that any of the symptoms about which she complained in any way resulted from the use of the spinal anaesthetic; and the testimony is conclusive to the effect that the nature of the anaesthetic had nothing to do with the creation of a scar. ■ She cannot rely on any theory that the operation itself was performed without her consent, because she

submitted an instruction, which was given, to the effect that "the plaintiff does not complain that her personal consent was not procured but has approved the act of her mother-in-law in consenting to such second operation and, therefore, the plaintiff is bound by such consent." Nor as stated did she prove that the scar was in any way the result of the use of the spinal anaesthetic, because all the evidence shows that neither the size of the scar nor the keloid formation could in any way have been attributed to the use of or connected in any way with the anaesthetic. The evidence shows that keloid tissue develops with some persons and not with others, and there is no way of ascertaining in advance whether a person is likely to develop such tissue. ■ Therefore, even taking as true appellant's evidence with regard to the prohibition of the use of a spinal anaesthetic, the defendant would at most be liable for nominal damages only, either for a technical assault and battery, or for a breach of contract, because no actual damage has been shown. ■ And it is well settled that a judgment for a defendant will not be set aside to permit the recovery of nominal damages. (*Lund* v. *Lachman,* 29 Cal. App. 31, 36 [154 P. 295] ; *Kenyon* v. *Western Union Tel. Co.,* 100 Cal. 454, 458 [35 P. 75] ; *Stewart* v. *Sefton,* 108 Cal. 197, 210; *Schmeltz* v. *Tracy,* 119 Conn. 492 [177 A. 520].)

Nor do we find anything in the instructions given or refused which calls for a reversal. ■ The first assignment is directed against a group of three instructions upon the question of negligence, and obviously they were based on the issues raised by the third count, which as stated as to respondent was not dismissed or withdrawn; and there is no claim made that as applied to the third count the instructions were erroneous. It is urged that the effect of those instructions was to withdraw from the jury the issues raised by the second count; but an examination of the record demonstrates that there is no merit in the contention, for it shows that the jury was extensively instructed regarding the matter of the giving of the spinal anaesthetic, including instructions as to the recovery of damages thereunder. ■ The next series of three instructions complained of related to the matter of consent to the use of the spinal anaesthetic. The broad objection is made that there was no evidence to warrant the giving thereof, and that they were confusing. However, the first two merely embodied abstract principles of law which were correctly

stated; and taking the evidence as a whole it cannot be held as a matter of law that the third instruction is unsupported. Read together the three instructions left it to the jury to determine from the conflicting testimony whether such consent was given; and appellant has made no attempt to point out wherein the instructions were confusing. ■ Appellant objects also to an instruction which told the jury that whether the doctor had exercised the degree of skill and care required of him could be determined only from the testimony of experts, "since it is only those learned in the profession who can say what should have been done or that what was done ought not to have been done." Appellant's objection is that it does not require expert testimony to establish that there is no right to operate without consent. The instruction related obviously to the charge of negligence, which it was necessary to prove by expert testimony (*Adams* v. *Boyce*, 37 Cal.App.2d 541 [99 P.2d 1044]); and furthermore, as above pointed out, appellant conceded that there was a sufficient consent to the second operation.

■ Appellant submitted and the court refused to give an instruction which would have authorized the jury to find that the consent signed was a matter between plaintiff and the hospital, of which the doctor could not avail himself unless the hospital was acting as his agent. It is quite plain that the consent was procured by the hospital for the benefit of the doctor who was to operate, and that as a matter of law he could avail himself of it for the first operation. The instruction was properly refused. ■ Appellant next contends that it was error for the court to refuse to give an instruction proposed by her to the effect that a consent to the first operation would not be a consent to the second. The subject was fully covered in appellant's instruction No. 11, which was given to the jury; furthermore the question of consent to perform the operation to remove the needle was not an issue in the case, because appellant conceded that her mother-in-law had consented to that operation, and that she was bound by such consent.

■ The assignments of error relating to the trial court's rulings on the admissibility of evidence are likewise without merit. In this regard appellant first contends that it was error to admit in evidence the signed authority to operate, which was signed prior to the appendectomy. Appellant asserts that this authority could apply only to the first opera-

tion and not to the second. But the record shows that the jury was instructed that the consent applied only to the first operation. Furthermore, appellant's husband testified that he had "made it clear" to respondent before the appendectomy that defendant was not to use a spinal anaesthetic; whereas the written authority signed by him embodied a consent to administer "whatever anaesthetics . . . may be decided to be necessary or advisable . . ."; therefore such written consent was admissible in impeachment of his testimony. ▮ Complaint is made also that the court struck out the husband's answer to a question as to whether appellant was conscious when she signed the consent to operate. The answer was, "Well, I don't think she really realized what she was doing or where she was going at that time. I had to carry her." The answer was stricken on respondent's objection that it was the conclusion of the witness. This question related only to appellant's signature on the consent to the first operation; and the capacity of appellant to sign had no bearing upon the effect of the document in impeachment of the husband's testimony; therefore it was immaterial to any issue relating to the second operation, with which we are here concerned.

For the reasons above stated, the judgment is affirmed; and in accordance with the written waiver filed herein by respondent, no award of costs will be made or entered in his favor.

Peters, P. J., and Ward, J., concurred.