BARBARA LYNN CHRISTIAN, an infant, by her next friend, James A. Christian, Plaintiff Below, Appellant, v. WILMINGTON GENERAL HOSPITAL ASSOCIATION, INC., a corporation of the State of Delaware, Defendant Below, Appellee.

(*November* 8, 1957.)

SOUTHERLAND, C. J., WOLCOTT and BRAMHALL, J. J., sitting.

*Donald W. Booker* for appellant.

*Edmund N. Carpenter, II*, for appellee.

Supreme Court of the State of Delaware, No. 23, 1957.

WOLCOTT, J.:

This appeal seeks reversal of a directed verdict for the defendant at the close of the plaintiff's testimony in the trial of an action before the Superior Court against the defendant hospital, based on the alleged negligence of its agent.

The facts may be stated as follows: The plaintiff, in January, 1953, the time of the injury, was approximately sixteen months of age and, while playing in her home, fell on a glass bottle which broke and cut her hand severely. The plaintiff was taken by her parents to the Wilmington General Hospital and there treated by an intern then on duty in the emergency ward. At the time of treatment, the plaintiff was crying and struggling so that she had to be held by her parents and a student nurse then on duty.

The intern examined the wound, treated it and sewed it up and, in response to a question by the infant's father, stated that the tendons of the hand were not severed. Later, although the testimony is somewhat confused as to the exact time, the plaintiff was again taken to the defendant hospital. This subsequent visit was either four or ten days following the accident. She was again examined by the same intern who noted that a stiffness had developed in the index finger of her right hand. At this time the intern did not diagnose the stiffness as having been caused by a severed tendon, although, again on this point, the testimony is confused.

Subsequently, a third time, the plaintiff was taken to the defendant hospital and, at this time, the plaintiffs parents may have been advised that the stiffness in the index finger was caused by a severed tendon. In any event, however, in April, 1953, the plaintiff was examined at the Philadelphia Naval Hospital and her parents advised that the tendon serving the index finger of her right hand had been severed, and that an operation would be required to repair it. As of the date of trial of this cause, approximately four years following the injury, the operation has not been performed.

The plaintiff called as witnesses two doctors to testify as experts. The substance of their testimony with respect to injuries of this type and the treatment customarily followed is set out. In a child of this age the tendon leading to an index finger is approximately the size of a heavy piece of string, perhaps as much as $\frac{1}{8}$ inch in diameter. By visual examination of the wound, it is possible to see the tendon if it has not been severed, but it is also entirely possible, in the case of a small struggling and crying child, that the tendon would not be seen. In the treatment of such a wound, it is routine practice to determine if possible whether or not tendons have been severed, but if the child is unco-operative, it is oftentimes impossible to determine because diagnosis requires flexion of the finger which, in turn, can be achieved only by the co-operation of the patient.

The doctors testified that when a tendon is divided an operation is invariably required to repair it since a severed tendon will not grow together of its own volition but tends to withdraw into the wrist after having been severed. They also testified that an immediate operation for a severed tendon is not always performed. Whether or not immediate repair is made, or the operation postponed depends upon a number of factors, such as possible contamination of the wound and, also, in the case of a small child the desirability of permitting normal growth to take place to make subsequent repair by operation easier.

The doctors were agreed that immediate operation is not necessary for the repair of a severed tendon and that postponement of the operation, even for as long as four years, would not result in any permanent disability by reason of the delay. In other words, successful repair of a severed tendon can be made after the lapse of years.

The doctors also testified it was possible, at the time of the initial examination by the intern, that the tendon leading to plaintiff's right index finger was only partially severed, which would not have been discovered by examination, and that the tendon might have ruptured later after the initial treatment, which, if that were the fact, would not have been the cause of the rupture.

Upon this state of the plaintiff's evidence the trial court instructed the jury to return a verdict for the defendant on the ground that it was insufficient to establish a *prima facie* case in the plaintiff's favor because of two deficiencies. The first deficiency was that there was no evidence at all that the intern employed by the defendant had failed to conform to accepted standards of care and treatment prescribed for physicians in the community. And the second deficiency was that there was no evidence offered by the plaintiff that the treatment performed by the intern was the proximate cause of the injury.

Plaintiff now appeals, making two basic arguments for the reversal of the directed verdict, *viz.*, (1) that the plaintiff did

offer sufficient evidence of the failure of the intern to conform to the accepted medical standards in the community for the care and treatment of injuries of the nature suffered by the plaintiff; and (2) that in any event the case should have been submitted to the jury by reason of the doctrine of *res ipsa loquitur*.

■■ As a general proposition, a physician, surgeon or dentist is answerable in damages for an injury to a patient resulting from his failure to use the standard knowledge and skill required of doctors, or by reason of his failure to use reasonable care and diligence in the application of such knowledge or skill. 41 *Am. Jur.*, Surgeons and Physicians, § 104; 70 *C.J.S.* Physicians and Surgeons § 48. However, as in every action based upon negligence, negligence is not presumed but must be affirmatively proven. This proposition is so elementary as to require no citation of authority. Nor does the sole fact that an injury has resulted from a certain treatment raise any presumption of negligence on the part of the attending doctor. See cases annotation, 162 *A. L. R.* 1278.

■■ It is therefore incumbent upon a plaintiff seeking recovery for injury upon the theory that that injury has resulted from faulty medical care given by a doctor to prove the medical standards to which that doctor is required to conform. In almost all cases this standard necessarily must be established by competent expert testimony since only in the most superficial way can laymen be expected to know the appropriate standards of care to be followed.

In this case the plaintiff attempted to establish the standard which should have been complied with. This was done by the testimony of two admitted experts in the field of treatment of injuries of this nature. It is clear from their testimony that it was entirely possible in examining this patient according to that standard not to ascertain at the time of such examination that a tendon had been severed. It is furthermore clear that the failure to ascertain immediately the severing of the tendon

did not result from a failure to conform to the accepted standard and, in any event, that no permanent injury has followed the failure to discover the condition.

It seems clear from the plaintiff's case that the intern at the defendant hospital examined the infant plaintiff as any other doctor in the community would have examined her under like circumstances. There is no evidence that his treatment of the wound and suturing failed in any respect to conform to the established standards for the medical profession.

This being the state of the evidence it is the law that a presumption arises that the doctor in fact exercised ordinary and reasonable care and prudence in the treatment of the wound, when there is no direct evidence to the contrary. *Mitchell v. Atkins*, 6 *W. W. Harr.* 451, 178 *A.* 593; 41 *Am. Jur.*, Physicians and Surgeons, § 127.

We are of the opinion, therefore, that the plaintiff failed to produce affirmative evidence of negligence by direct testimony sufficient to require the trial court to submit the issue of negligence to the jury for its determination.

In this connection appellant argues that it is not necessary to prove the standard of care required of doctors by the testimony of other doctors because of what is said to be an unwillingness on the part of one doctor to charge his professional brother with negligence. It is, of course, obvious that in some instances a jury of laymen could determine without the testimony of experts that a treatment given was so unrelated to the injury or illness of the patient as to make obvious to any one the failure of the doctor to exercise acceptable standards of care. But, in the ordinary case of bodily injury, the proper treatment of which would not be known to a layman, we think it necessary to offer the testimony of admitted experts for the guidance of the jury in determining the issue of neglience or non-negligence. In our opinion, the injury of which this plaintiff complains was of such nature as to require a method of treatment not obvious

enough to warrant the assumption that a layman, in the absence of expert testimony on the subject, could make an intelligent decision upon the propriety of the treatment given.

Secondly, the plaintiff argues that the issue of negligence should have been submitted to the jury because of the doctrine of *res ipsa loquitur*. This court's predecessor, in *Delaware Coach Co. v. Reynolds*, 6 *Terry* 226, 71 *A.* 2d 69, 73, stated that the doctrine of *res ipsa loquitur* is available to a plaintiff to take his case to the jury "where the facts and circumstances surrounding the occurrence of the injury warrant the inference of negligence on the part of the defendant." The court went on to say that in order to determine the availability of the doctrine the court must examine the manner in which the alleged injury occurred and then determine whether or not in the usual course of events it would be concluded by reasonable persons that the injury would probably not have occurred except for some negligence on the part of the defendant.

In *Mitchell v. Atkins,* supra, a case seeking to make a dentist respond in damages for the death of a patient in the circumstance that, while extracting a tooth, gas was administered as an anesthetic under the influence of which the patient died, it was held that a court in the declaration alleging no negligence but relying solely upon the doctrine of *res ipsa loquitur* based upon the fact of administration of an anesthetic and subsequent death, was subject to demurrer for failing to state a cause of action. The court went on to say that it was necessary in such actions to prove a lack of requisite knowledge or skill, or a failure to exercise such, or the use of some instrumentality in treatment of the patient which results in something so inconsistent with the normal and usual result that negligence in the application of the instrument must be pre-supposed.

This case in its best light for the plaintiff is, at most, one of an unfavorable result from the treatment employed. It seems clear in such circumstances that, based upon the unfavorable nature of the result of treatment, no presumption of negligence

on the part of the doctor can arise. See Annotation, 162 *A. L. R.* 1281; *Mitchell v. Atkins, supra;* 38 *Am. Jur.*, Negligence, § 295.

We are of the opinion, therefore, that the trial court was correct in refusing to submit the issue to the jury on the doctrine of *res ipsa loquitur.*

The foregoing is sufficient to affirm the judgment below. We are not called upon, therefore, to pass upon the additional question of whether or not the plaintiff had successfully shown any causal connection between the treatment given by the intern and the injury. We content ourselves in this respect with saying that we think it clear that the treatment given did not and could not have caused the stiffness in the plaintiff's index finger. That stiffness was caused solely by the severing of the tendon, which was caused in turn by the cut inflicted by the broken bottle and not by the treatment given the plaintiff at the hospital.

The judgment below is affirmed.