YOLANDA FISCHER and WILLIAM FISCHER, Plaintiffs, v. WILMINGTON GENERAL HOSPITAL, a corporation of the State of Delaware, Defendant.

*(March* 20, 1959.)

SEITZ, Chancellor, sitting.

*Aubrey B. Lank* and *Joseph T. Walsh* (of Logan, Marvel, Boggs and Theisen) for plaintiffs.

*Rodney M. Layton* (of Richards, Layton and Finger) for defendant.

Superior Court for New Castle County, No. 775, Civil Action, 1957.

SEITZ, Chancellor:[1]

The plaintiffs are husband and wife. I shall refer to Mrs. Fischer as "plaintiff".

Plaintiff was admitted to the Hospital on July 30, 1956, to receive treatment in connection with an incomplete abortion. Dr. Frank Hassler performed a surgical procedure known as dilation and curettement upon plaintiff and in the process caused 500 cc's of whole blood to be administered to her. Although the Hospital vigorously disputes it, on the present record, solely for purposes of deciding this motion, I must assume that Dr. Hassler was the defendant's agent and not in the position of plaintiff's personal physician.

Plaintiff was released from the Hospital in about two days, but on September 6, 1956, Dr. Frank J. Gilday caused plaintiff's readmission to the Hospital for treatment of viral hepatitis.

Subsequently, plaintiffs filed this action alleging that she had contracted the disease known as serum hepatitis[2] as a result

---

[1]Assigned as Acting Superior Court Judge by the Supreme Court of Delaware.

[2]One of the two virus known to cause viral hepatitis.

of the negligence of defendant's agents in administering to her, in transfusion, blood containing the causative agent of the disease.

The defendant has moved for summary judgment in its favor and this is the decision thereon. Fairly elaborate affidavits have been filed. This appears to be the first Delaware case where any aspect of the transfusion problem has been presented to the court.

While plaintiffs' complaint alleges several grounds of negligence, their attorney agreed at oral argument that for purposes of the present motion plaintiff relies only upon the following allegation:

"The Defendant, Wilmington General Hospital, its agents, servants or employees knowing that the said whole blood administered to the Plaintiff, Yolanda Fischer, was, or could have been infected by a disease or virus, failed to so advise Plaintiff, Yolanda Fischer, of its knowledge."

Defendant's affidavits establish indisputably that there is no known medical technique by which the virus which causes hepatitis can be detected or destroyed in the whole blood. The affidavits further disclose that the blood used in the transfusion here involved was procured under conditions which imposed all reasonable safeguards to assure that it did not contain the virus which causes such hepatitis. Plaintiffs' affidavits raise no doubt on this score. Consequently, to the extent plaintiffs' complaint is predicated on the allegation that the defendant's agents, etc., knew that the blood administered to plaintiff was infected by the hepatitis virus and failed to so advise plaintiff, it is without support in the record. On the contrary, the only reasonable inference from the record is that defendant's agents did not know that the blood contained such virus. See 42 *Minn. Law Rev.* 640, 654-7. In so stating, I am assuming without deciding that plaintiff's hepatitis was caused by the transmission of the virus in the course of the blood transfusion. Defendant contends to the contrary but that issue cannot be resolved at this stage.

This then brings the court to the basic issue, namely, whether the defendant, Hospital, was negligent in that its agents administered whole blood to the plaintiff knowing that such blood could have been infected by the virus which causes hepatitis and yet failed to so advise plaintiff prior to the transfusion.

Defendant contends that this cannot be a case of negligence because there is no showing of proximate cause between the alleged breach of duty in failing to advise the plaintiff of the risk and the fact that the disease was assumedly contracted by virtue of the transfusion. Defendant says that plaintiffs' complaint, if it alleges anything, alleges assault and battery arising from the failure to procure consent in advance.

Plaintiff claims that the failure to warn her of the known risk constituted negligence. However, no question of lack of "consent" is here raised by plaintiffs. Nor is any claim of negligence made in connection with the use of whole blood.

It is undisputed that neither plaintiff nor her husband was advised of the risk incident to the transfusion although they could have been.

Passing over the dispute as to whether defendant's actions, if wrongful, would be a trespass or negligence, the issue in either event would appear to be whether the known risk here involved was of a type which imposed upon defendant a duty to warn plaintiff in advance. No case involving this theory of negligence with respect to blood transfusions has been found anywhere. Compare 59 *A. L. R.* 2d 768.

The defendant filed several affidavits of medical doctors and there is no attack upon the qualifications of such doctors. The doctor who directed the giving of the transfusion and who performed the operation, says in his affidavit in part:

"Mrs. Fischer had been admitted to the Hospital under a provisional diagnosis of incomplete abortion accompanied by lower abdominal pain and vaginal bleeding. The history received in connection with Mrs. Fischer's admission showed that

the vaginal bleeding had continued for five hours prior to her admission. This bleeding continued, and, prior to the time when the surgical procedure aforesaid was performed by me, it became brisk. In connection with Mrs. Fischer's illness and the surgical procedure dictated thereby, I caused the administration to her of 500 cc. of whole blood by transfusion.

"* * * I am familiar with the results of current medical research in the causes of maternal mortality and state that hemorrhages and resulting shock are the prime cause of maternal death in the United States at the present time.

"It is clearly indicated by the above facts that the danger of fatality resulting from blood loss and consequent shock in cases such as that of Mrs. Fischer clearly overrides the risk of the contraction of a viral hepatitis by means of blood transfusion. In spite of the temporary disability and discomfort associated with hepatitis and the natural desire of the physician to avoid the transmission of the disease to his patient, the fatality rate from hepatitis being less than 0.5% in the presence of the very great danger of fatality from blood loss and consequent shock, such transmission represents an almost insignificant risk. In my opinion it would, generally, constitute extreme neglect on the part of a physician to permit the risk of the communication of viral hepatitis to prevent the administration of a blood transfusion in a case of incomplete abortion where substantial bleeding had occurred."

The affidavit of another doctor states in part as follows:

"In cases of incomplete abortion it is my practice and the accepted practice generally within the medical profession in the vicinity of Wilmington, Delaware, where there has been profuse bleeding, to administer blood by transfusion in order to obviate the possibility of shock and the serious consequences which may occur therefrom. It is known to the medical profession generally that there is some risk of the development of a serum hepatitis infection or homologous serum jaundice, every time a recipient receives blood by means of transfusion. The reason for this is

that there is no known means of excluding those donors who might be carriers of the virus causing serum hepatitis infection or homologous serum jaundice, as there is at the present no known means of determining the presence of such virus in the blood of the donor. The importance of avoiding the very dangerous consequences of severe or irreversible shock, in cases of marked blood loss by giving blood transfusion or transfusions is considered to be more important than the minimal chance that the recipient takes of developing serum hepatitis infection or homologous serum jaundice by receiving the blood of a donor in which the causative organism is present.

"* * * In my opinion it would, generally, constitute extreme neglect on the part of a physician to permit the risk of the communication of viral hepatitis to prevent the administration of a blood transfusion in a case of incomplete abortion where substantial bleeding had occurred."

The following appears in another doctor's affidavit filed by defendant:

"It is an accepted fact that the risk of transmitting viral hepatitis in transfusion of whole blood is at present unavoidable. The estimated incidence of such transmission occurring is 0.45-1.0% in transfusions of whole blood."

The affidavit of plaintiff's husband shows that she was approximately $2\frac{1}{2}$ months pregnant at the time of her admission to the Hospital. He also stated that he had been advised that she had some vaginal bleeding.

The plaintiff's affidavit shows that the bleeding commenced at or before 9 a. m. on July 30, 1956, and that she was not operated upon until approximately 1:30 p. m. She states that at no time did she experience bleeding of sufficient extent to cause her to believe that she was in need of any blood transfusions. She says it did not appear to be anything more to her than her normal menstrual flow and was not a cause of alarm to her except for the fact that she knew she was pregnant.

An affidavit filed on behalf of plaintiffs by a medical doctor points out that there are serious risks attendant to a blood transfusion, which may cause death or serious ailment, such as errors arising out of cross matching of types of blood, serum hepatitis, malaria, syphillis and other infectious diseases such as measles and influenza. It is stated that the most common risk is that of serum hepatitis. It is thought that 0.5% of the population of this country are carriers and it is known in the medical profession that the incidence of serum hepatitis following a blood transfusion ranges from 0.45% to 1.0% and may be considerably higher as illustrated by the medical experience of the Korean War where the incidence rose to 3.5% in cases of soldiers receiving transfusions of whole blood. The doctor goes on to state in his affidavit that he was not in a position to know of plaintiff's need for a blood transfusion at the time but was of the opinion that because of the serious risk attendant to transfusions of whole blood such transfusions should not be given unless in the exercise of reasonable judgment they are necessary.

I have set forth the material in the various affidavits at some length because in negligence cases it is often most difficult to determine whether or not the case is properly before the court for decision on the merits when it is presented on a motion for summary judgment.

The defendant's affidavits show that the plaintiff's illness and the surgical procedure dictated thereby formed the basis for the doctor's decision to order the transfusion. The serious problem of shock as it relates to the diagnosis of plaintiff's condition is fully set forth in the quoted material. Plaintiff says in her affidavit that she did not experience sufficient bleeding to cause her to believe that she was in need of any blood transfusion. There is no affidavit filed by plaintiff in which any professional person suggests that the transfusion was not necessary. Surely the plaintiff's lay opinion, on this subject, particularly when based on the scanty facts which she mentions, is not sufficient to make an issue of the doctor's determination to order

a transfusion under the facts narrated by him[3]. In any event, plaintiff does not appear to base her case in opposition to defendant's motion upon the theory that the transfusion was not in fact needed.

I therefore conclude from the material which may properly be considered that plaintiff cannot make a jury issue of the propriety of the doctor's determination to order a blood transfusion here.

The affidavits filed by certain doctors, whose competence is not challenged, show that the risk of transferring the hepatitis virus is almost an insignificant risk in comparison of the risk of shock if transfusion is needed and not given. In effect, the ordering of a transfusion in a case such as was here involved is considered to be a calculated risk.

The court takes judicial notice of the frequent use of blood transfusions in the present day. All the foregoing facts must be considered in conjunction with the unchallenged statement appearing in the affidavit of a Delaware physician to the effect that:

"* * * it is not my practice or the practice generally within the medical profession in this locality to advise patients of the risk of such infection, since the psychological and psychosomatic effect of the alarm which would be produced by such advice would run counter to the beneficial effect sought to be produced by the transfusion itself."

Considering the frequency of the use of transfusions, the nature and extent of the risk involved in comparison with the alternative risk, the possible detrimental effect of advising patients of the risk and the general practice in the local medical profession not to so advise patients, the court feels impelled to conclude that this defendant did not have a legal duty to plaintiff to advise her in advance that hepatitis might be communicated thereby. Consequently, defendant was not guilty of negli-

---

[3]*Christian v. Wilmington General Hospital,* 11 *Terry* 550, 135 *A.* 2d 727.

gence. Compare *Christian v. Wilmington General Hospital,* above.

Plaintiff argues that the question of whether the defendant failed to properly fulfill its duty of informing the patient of a known risk is a matter for the jury because it involves a direct contradiction of fact. The court does not feel that the facts which form the basis for determining whether or not a duty was involved are in dispute. For example, plaintiff did not challenge the affidavit of defendant's doctor that it is not the general practice in the medical profession in this locality to advise the patients of the risk of hepatitis infection. There is nothing in the record which would justify the conclusion that there is a dispute about a material fact and the matter may therefore be disposed of on defendant's motion.

Plaintiffs' complaint is without merit and the defendant's motion for a summary judgment dismissing the complaint will be granted.

Present order on notice.