Lawney Estelle GOVIN and Jerry Francis
Govin, Appellants (Plaintiffs below),

v.

Richard T. HUNTER, Appellee
(Defendant below).

No. 3049.

Supreme Court of Wyoming.

Sept. 14, 1962.

Ross & Buge, Vincent A. Ross, Cheyenne, for appellants.

Swainson & Swainson, Clarence A. Swainson, Cheyenne, for appellee.

Before BLUME, C. J., and PARKER, HARNSBERGER and McINTYRE, JJ.

Mr. Justice McINTYRE delivered the opinion of the court.

The only question presented on appeal in the instant case is whether or not sufficient evidence was offered in the trial below to go to the jury. The case involved a claim on the part of Lawney Estelle Govin and her husband, Jerry Francis Govin, for injury allegedly caused by Dr. Richard T. Hunter, a practicing physician, in a surgical operation performed upon the right leg of Mrs. Govin for correction of a varicose-vein condition and the stripping of a vein. At the close of all the testimony on behalf of both sides, the trial court, considering the evidence insufficient to support the asserted claim, granted a directed verdict in favor of the doctor.

Several local physicians, including those called by the plaintiffs, testified without conflict or contradiction that the operation performed by Dr. Hunter improved the patient's condition and rid her of the major varicosity; that the usual and customary operative procedure was undertaken and accomplished by Dr. Hunter; that the job was well done and that Dr. Hunter exercised the degree of care and skill that is ordinarily possessed and exercised by physicians and surgeons in the locality; that the vein in question was removed in its entirety and that the tortuous and twisting course of the vein made six incisions necessary.

Mrs. Govin testified that she had been told by Dr. Hunter that he would strip the vein with one incision behind the knee and one behind the ankle. She claims that the doctor said he would make the incisions and put a stripper down her leg and strip out the vein, after which she would have no more trouble with it. The physicians who testified on the subject all testified that it was impossible to strip this vein with two incisions, and that surgeons cannot tell how many incisions will be required.

Counsel for the Govins seems to recognize that, in order to sustain a claim for damages based upon malpractice or negligence on the part of a physician, the rule in this jurisdiction and in other jurisdictions generally has heretofore been that it is necessary for a plaintiff to prove by the evidence of competent experts that the injury complained of was caused by negligence. Phifer v. Baker, 34 Wyo. 415, 244 P. 637, 649. See also Newman v. Zinn, 3 Cir., 164 F.2d 558, 560; Stallcup v. Coscarart, 79 Ariz. 42, 282 P.2d 791, 794; Simone v. Sabo, 37 Cal.2d 253, 231 P.2d 19, 22; and Di Filippo v. Preston, Del., 173 A.2d 333, 336.

It is recognized that the claim of negligence or malpractice in the case at bar has not been supported by any medical or expert testimony. Hence, there is submitted for our determination the consideration as to whether we are prepared to reverse the rule announced in Phifer v. Baker.

Counsel argues that the question of malpractice should be reviewed by the court "in the light of modern day standards and practices being conducted by doctors in general." The contention is made that a more liberal view as to needs and requirements of expert testimony should be adopted by the courts since we are now dealing with a more informed public.

The obvious answer to counsel's argument is that the court has no place to turn for enlightenment on the modern day standards and practices being conducted by doctors in general, except to the experts themselves who are both trained and experienced in the field or profession involved. We have no reason to believe that only doctors who are old and behind the times testified in this case. To the contrary, it appears quite evident to us that the physicians who testified were expressing their opinions in the light of modern day standards and practices.

This court announced in the Phifer case that a jury, in considering whether a defendant-physician exercised ordinary care

and skill, may not set up a standard of its own but must be guided in that regard solely by the testimony of physicians. Although asking us to discard this rule, the complainants in this case fail to suggest a substitute standard for ordinary care which may be followed by the jury. We do not understand how a jury could possibly find the existence of negligence in a malpractice case without a standard to go by.

It is true that Mrs. Govin herself testified that Dr. Hunter told her she would have two incisions only and that she would have no more trouble with the vein. Dr. Hunter, testifying in his own behalf, denied these statements. No doubt plaintiff's testimony would nevertheless have been sufficient to go to the jury if it had been coupled with substantial evidence to show that plaintiff was induced by the alleged statements to have the operation.

■ Actually however, plaintiff's own evidence established the opposite. It showed that the operation was not induced by anything Dr. Hunter said or failed to say. His explanations or lack of explanations were therefore immaterial. The mere fact that there are conflicts in the testimony does not render the direction of a verdict erroneous, when it appears that the conflicts are immaterial. Beman v. Stembridge, 211 Ga. 274, 85 S.E.2d 434, 439.

The further testimony of plaintiff, corroborated by other evidence in the case, established without contradiction that Mrs. Govin had had varicosity since the age of fifteen; that she had had surgery about ten years previous on the right side for vein ligation; that for a period of four years she had had increasing difficulty with veins in her right calf, these being enlarged and painful; and that she consulted Dr. Schleyer, a physician and surgeon, seeking some care for the right lower leg and to see what could be done about her varicose veins in the right calf.

Dr. Schleyer advised surgery and described the method of stripping. Later Mrs. Govin's husband returned with her to Dr. Schleyer's office and the matter was discussed further. Dr. Schleyer then scheduled her for vein stripping in the lower right leg. Dr. Schleyer told Mrs. Govin that he thought Dr. Hunter would do a better job and that they would therefore have him do it.

Dr. Hunter came into the picture and first met the patient at De Paul Hospital in Cheyenne the night before the operation. At that time she was already in the hospital for her operation. At the request of Dr. Schleyer, Dr. Hunter stopped in to see and to examine the patient with reference to varicose veins of her lesser saphenous system on the right side. On the following morning Dr. Hunter performed the operation with Dr. Schleyer as the assistant surgeon.

It is argued on behalf of Mrs. Govin that Dr. Hunter should have advised her that multiple incisions would be necessary and additional scars and disfigurement of the leg would appear; and that she should have had an opportunity to decide whether she wanted the multiple incisions on her leg. Counsel contends that failure on the part of the doctor to apprise the patient fully as to the results which might be expected would of itself constitute malpractice.

■ We realize that under certain circumstances a physician has a duty to reveal any serious risks which are involved in a contemplated operation. But, how a physician chooses to discharge his obligations to a patient involves primarily a question of medical judgment. As long as his disclosure is sufficient to assure an informed consent, and if it appears that he proceeded as competent medical men would have done in a similar situation, the physician's actions should not be called into question. Natanson v. Kline, 186 Kan. 393, 350 P.2d 1093, 1106.

■ As indicated in the Natanson case, disclosure by the physician is required in order to assure that an informed consent of the patient is obtained. But, as far as Mrs. Govin is concerned, her own testimony es-

tablishes that consent for her operation was given to Dr. Schleyer, and that Dr. Hunter was engaged by Dr. Schleyer to perform the surgery. Thus, no disclosures on the part of Dr. Hunter became necessary to assure a consent already given. See Hall v. United States, D.C.La., 136 F.Supp. 187, 192, affirmed 5 Cir., 234 F.2d 811, relating to consents being implied from circumstances such as voluntary submission to an operation; and Keister v. O'Neil, 59 Cal.App.2d 428, 138 P.2d 723, 728, relating to a consent given to the hospital for the benefit of the doctor.

■ Whether or not a surgeon is under a duty to warn a patient of the possibility of a specific adverse result of a proposed treatment depends upon the circumstances of the particular case and upon the general practice followed by the medical profession in the locality; and the custom of the medical profession to warn must be established by expert medical testimony. Di Filippo v. Preston, Del., 173 A.2d 333, 339. See also Fischer v. Wilmington General Hospital, 1 Storey 554, 51 Del. 554, 149 A.2d 749, 753; Christian v. Wilmington General Hospital Association, 11 Terry 550, 50 Del. 550, 135 A.2d 727, 730.

In Hunt v. Bradshaw, 242 N.C. 517, 88 S.E.2d 762, 766, it was held (1) that proof of what is in accord with approved surgical procedure, and (2) that the advisability of the operation itself, are both matters not within the knowledge of lay witnesses but must be established by the testimony of qualified experts. The Supreme Court of North Carolina thereupon sustained a judgment of nonsuit entered in a superior court because of the "lack of expert testimony" that the defendant failed, either to exercise due care in the operation, or to use his best judgment in advising it.

As was said in Smith v. Wharton, 199 N.C. 246, 154 S.E. 12, 15, and quoted with approval in Hunt v. Bradshaw, supra, there can be no other guide, and where want of skill and attention is not shown by expert evidence applied to the facts, there is no evidence of such want to be submitted to the jury.

■ Thus, it becomes apparent, in the case at bar, that since no expert medical testimony was offered to show that Dr. Hunter's attention to his patient was substandard, or to show that ordinary medical care in the locality and under the circumstances of this case required more from him in the way of advice and disclosure to the patient than he gave, there remains no standard and consequently no evidence of a breach of that standard to submit to a jury.

■ A separate count in the complaint of Mr. and Mrs. Govin suggests that there was a contract between them and Dr. Hunter for the operation, with a warranty that the operation would be successful, leaving no scars or aftereffects. Concerning this count, there was a complete absence of evidence of an express contract. Moreover, there is no basis in the evidence, viewed in its most favorable light to plaintiffs, for a finding that there was an implied contract of warranty of success without scars or aftereffects.

■ In the case of Phifer v. Baker, to which we have already referred, at 244 P. 649, it was pointed out that a physician is not bound to insure successful treatment or a cure, but only to do what is usually and ordinarily done by surgeons in like circumstances to effect a cure. Chief Justice Potter, author of that opinion, said:

"* * * a physician does not impliedly contract that his treatment will be successful, or that ill and serious results may not follow as a direct result of such treatment; but by implication he guarantees that he possesses that reasonable degree of learning and skill possessed by others of his profession, and that he will exercise reasonable and ordinary skill in the application of such knowledge to accomplish the purpose for which he is employed. * * *"

In the Hunt case, at 88 S.E.2d 766, and also in Ewing v. Goode, 8 Cir., 78 F. 442,

443, it was said that a physician is not a warrantor of cures.

We think the district court was correct in finding that there was an absence of substantial evidence to prove Dr. Hunter guilty of negligence or malpractice or to prove the existence of a contract of warranty beyond ordinary care. The directed verdict in favor of Dr. Hunter, the defendant, was therefore proper and it must be affirmed.

Affirmed.