**UNITED STATES of America,**
**Plaintiff,**

**v.**

**CERTAIN LAND, Together With Improvements Thereon LOCATED AT 400 LEE STREET, MONTGOMERY, ALABAMA, and the Security Life and Accident Insurance Company, et al., Defendants.**

**Civ. A. No. 1832–N.**

United States District Court
M. D. Alabama, N. D.
Feb. 14, 1963.

Ben Hardeman, U. S. Atty., and Rodney R. Steele, Asst. U. S. Atty., Montgomery, Ala., for plaintiff.

William M. Acker, Jr., W. Bruce White (of Smyer, White, Reid & Acker), Birmingham, Ala., and Jack Crenshaw (of Crenshaw, Wright, Long & Franco), Montgomery, Ala., for Security Life.

Walter J. Knabe, Montgomery, Ala., for W. C. Jennings and the City of Montgomery.

JOHNSON, District Judge.

This is a condemnation case filed July 30, 1962, in which the United States of America took as of August 1, 1962, under its power of eminent domain for public use, a building located in Montgomery, Alabama, known as the Veterans Administration Building; the estate taken was a leasehold interest for a five-month term commencing August 1, 1962, and ending December 31, 1962, with the Government's having the option to extend the use and occupancy of the premises for the

month of January 1963 upon thirty days' written notice, together with the option of the Government to remove within a "reasonable time" after the expiration of the initial five-month term or any extended term, the improvements and structures placed therein or thereon by the United States during its use and occupancy of the property. For this taking, the United States paid into the registry fund of this Court $45,200.

The pretrial order made and entered in this case in September 1962, by agreement of the parties, defined the sole issue as being, "What is the just compensation to be awarded for the estate taken, the just compensation being the fair market value of said estate as of August 1, 1962." As is reflected by the pretrial order, it was understood and agreed between the parties that the "estate taken" included the option of the United States to extend the use and occupancy for the month of January 1963, together with the option in the United States to remove certain fixtures and furniture within a reasonable time after the expiration of the initial term or the extended term. It was further understood and agreed that the estate taken did not include any services and did not include any compensation for occupancy for any period prior to August 1, 1962, or any period subsequent to December 31, 1962. It was further understood that the "estate taken" did not include the cost, if any, of restoring the premises after the premises were vacated by the United States.

The case came on to be heard before the Court and a jury, and on November 19, 1962, a jury returned a verdict determining that the just compensation to be awarded for the estate taken was $118,-800. This Court on November 30, 1962, entered a formal order and judgment on the jury verdict.

The matter is now presented upon the motion for a new trial timely filed herein by the United States of America. The grounds relied upon by the United States in its motion which this Court considers decisive of the matter are (1) that the verdict as returned by the jury was excessive and (2) that there was no credible testimony upon which the jury could base the verdict which it rendered in this case. For the reasons hereinafter stated, this Court is of the opinion that the verdict as rendered by the jury in this case in the amount of $118,800 is grossly excessive, that there was no credible testimony to support this award for the five-month rental period and for the two options which were taken by the United States in this proceeding, and therefore it is necessary and appropriate for this Court to meet its duty and responsibility in such instances by setting aside the excessive verdict as rendered by the jury in this case and to conditionally grant a new trial. The granting of a new trial will be conditioned upon the failure of the Security Life and Accident Insurance Company's filing a remittitur with this Court within twenty days from the date of this order, said remittitur to be filed down to $83,-200. In other words, the granting of a new trial in this case will be conditioned upon the Security Life and Accident Insurance Company's failing and refusing to accept the sum of $83,200 as full and just compensation in this case. Its failure to do so will necessitate this Court's making and entering an order in this case granting the motion of the United States, wherein it seeks to have a new trial ordered.

In cases such as this one, the burden of proving just compensation rests upon the owners of the land and not upon the Government. Westchester County Park Commission, et al. v. United States, 2 Cir., 143 F.2d 688, cert. denied 323 U.S. 726, 65 S.Ct. 59, 89 L.Ed. 583. The jury must make a determination as to just compensation solely from the evidence as presented on the trial of the case. United States v. Dillman, et. al., 5 Cir., 146 F.2d 572, cert. denied 325 U.S. 870, 65 S.Ct. 1409, 89 L.Ed. 1989. Where the testimony submitted to the jury and relied upon by the landowners in their efforts to establish just compensation is testimony from expert witnesses, the opinions as expressed by the ex-

perts must be founded upon substantiated evidence and must not be based upon unsupported assumption, conjecture or speculation. As the United States Court of Appeals for the Fifth Circuit said in United States v. Cooper, 277 F.2d 857:

> "An expert witness may give his opinion based on assumptions stated by him. However, if the assumptions needed to support the opinion are not proved, or at least testified to, and are not otherwise taken to be true, the opinion is worthless. See International Paper Co. v. United States, 5 Cir., in which we stated: 'Of course, opinion evidence may of itself be substantial enough to take a case to the jury. However, an opinion is no better than the hypothesis or the assumption upon which it is based.' 227 F.2d 201, 205."

As was stated by Circuit Judge Frank in the Westchester County Park case, supra:

> "But that guess must have a rational foundation. And the owner of the land must supply the court with materials for a guess having such a foundation. For on the owner, and not on the United States, rests the burden of establishing the value. United States ex rel. T. V. A. v. Powelson, 319 U.S. 266, 273, 274, 63 S.Ct. 1047, 87 L.Ed. 1390; Ralph v. Hazen, 68 App.D.C. 55, 93 F.2d 68, 70; Welch v. T. V. A., 6 Cir., 108 F.2d 95, 101."

In this case, the landowner relied almost exclusively upon the testimony of one expert witness, Steiner.[1] This expert witness failed to demonstrate sufficient actual personal knowledge of the facts affecting the value of the estate taken at the time of the taking. He failed to demonstrate an adequate basis for the valuation he placed upon the estate taken in this case, this valuation being the sum of $127,900 for the five-month term with the two options. This expert's "opinion" was unsupported by any material and essential facts or other primary evidence. Further, it appears that the landowner's expert failed to employ the proper standard for determining value in this particular case. As a matter of fact, it affirmatively appears that the landowner's expert employed the improper standard of considering unduly the unique value of the property in question to the United States for use by its Veterans Administration. A careful review of the testimony in this case by this Court reflects that an undue consideration was given by the landowner's expert witness to the effect that it would have been uneconomical to the United States Government's Veterans Administration for it to have to move twice, with the disruption of Government services to veterans, and, further, that there was no other space available in the Montgomery area to accommodate an agency as large as the Veterans Administration Regional Office. Steiner even went so far as to impose what he called a "peculiar penalty" against the United States because of its having exercised its power of eminent domain; he awarded "some additional compensation" because of this. Therefore, there is a clear implication from expert Steiner's testimony that his hypothetical purchaser and seller were not hypothetical at all, but were the United States and the Security Life Company. It affirmatively appears that the landowner's expert arrived at his value by giving undue consideration to the fact that the United States was under a compulsion to take the premises in question and, further, that since Security Life had not been able to have the United States renew the lease in question, it was fair to Security Life to receive as just compensation for the five-month period a sum as great, less services which were not included in this case, as it had been receiving for its full annual rental under the negotiated lease between the United States and Security Life. In

---

1. This Court does not consider the conclusion of the witness Atherton as it relates to value, to have a rational foundation and, further, the evidence (or the lack of it) fails to reflect Atherton qualified to testify as to value.

other words, undue consideration was given by the landowner's expert to the taker's gain. This cannot be permitted. See General Motors Corporation v. United States, 7 Cir., 140 F.2d 873, modified 323 U.S. 373, 65 S.Ct. 357, 89 L.Ed. 311. Furthermore, it appears that the landowner's expert Steiner gave undue consideration to the fact that Security Life would lose the opportunity to rent to another for a long term. This is incompetent evidence. See United States ex rel. Tennessee Valley Authority v. Powelson, 319 U.S. 266, 63 S.Ct. 1047, 87 L.Ed. 1390.

In addition to the above, the verdict rendered by the jury in this case in the amount of $118,800, purporting to be just compensation for five months' rental and two options, is grossly excessive when considered in the light of the credible evidence. In such instances, as was stated by the Court in Murphy v. United States District Court, etc., 9 Cir., 145 F.2d 1018:

> "A Federal District Judge not only has the power and authority but is charged with the duty and responsibility to set aside the verdict of a jury and to grant a new trial when in his judgment and discretion the amount of compensation awarded is excessive. * * *"

 This Court is not unaware of the gravity of upsetting a jury verdict, but in this particular case there is no doubt of the necessity for doing so, since the verdict of the jury is not only unsupported by any credible testimony, but, moreover, is excessive on its face to the point that it shocks the conscience of this Court. The clearly excessive nature of the verdict in this case is demonstrated as vividly as it was in Murphy v. United States District Court, etc., supra. Here, the United States had been leasing the premises in question at an annual rate of $179,600 for approximately fifteen years. This annual rate included at least $40,000 worth of services which were not to be provided in the leasehold as condemned. Thus the annual rental without services, as negotiated, was $139,600 at

its maximum. This means that under the negotiated price, the monthly rental for the same premises the United States took in this condemnation proceeding was less than $11,640; for a like period as is being taken in this proceeding, it would, as negotiated, be less than $58,200. There is no question but that for a short term the landowner is entitled to what the experts refer to as a vacancy allowance or a "short-term-lease penalty." In addition, in this particular case, the landowner is entitled to just compensation for the options. However, the maximum reasonable amount in light of all the evidence in this case that could be awarded for these matters in addition to the fair rental for five months would be the sum of $25,000. Thus, the total maximum award that could justly be made in this case would be the sum of $83,200. The verdict as rendered by the jury was at least $35,600 in excess of any maximum amount this Court could or would permit to stand.

In this case this Court is going to allow the landowner, Security Life, an election whereby it may file a remittitur to this Court down to the sum of $83,200, or submit to a new trial in this case. This action conforms to that approved in Dimick v. Schiedt, 293 U.S. 474, 55 S.Ct. 296, 79 L.Ed. 603. In arriving at the maximum amount that can be awarded in this case for the estate taken by the United States, this Court is proceeding on the theory that the remitted amount is to reduce the verdict only to the maximum that would be upheld by this Court, as not being grossly excessive. Such action is upon the theory that the jury intended to award the Security Life the maximum legal amount and this Court should not invade the province of the jury except to the extent that is necessary to reduce the amount of the verdict to that maximum figure. In this connection, see International Paper Co. v. Busby, 182 F.2d 790 (5th Cir., 1950); 6 Moore's Federal Practice, Par. 59.05[3].

In accordance with the foregoing and for good cause, it is the order, judgment and decree of this Court that the motion

of the United States seeking to have this Court set aside the verdict of the jury rendered herein on November 19, 1962, and order a new trial of this case, be and the same is hereby conditionally granted. It is further ordered that the granting of a new trial will be conditioned upon Security Life and Accident Insurance Company's failure to file with the Clerk of this Court on or before the 6th day of March, 1963, its remittitur of all the jury verdict of $118,800 in excess of $83,-200.