## T. J. STARKER v.
## DEPARTMENT OF REVENUE

Charles P. Duffy and Donald J. Georgeson, Duffy, Stout, Georgeson & Dahl, Portland, represented plaintiff.

G. F. Bartz, Assistant Attorney General, Salem, represented defendant.

Decision for plaintiff rendered March 28, 1975.

Carlisle B. Roberts, Judge.

The plaintiff appealed from the defendant's determination of deficiencies in gift taxes due the State of Oregon, pursuant to ORS 119.250, for gifts made in the

calendar years 1969, 1970 and 1971 (Gift Tax File No. G-73015). The gift taxes at issue in case No. 756 are for the years 1969 and 1970; the gift taxes at issue in case No. 867 are for the year 1971.

Plaintiff is a resident of Benton County, Oregon. He has engaged in timber operations for many years. During the years 1969, 1970 and 1971, plaintiff made gifts of timber, timberlands, two lots in the City of Corvallis, and his vendor's interest in a real estate sales contract of Corvallis property. The question presented to the court is the value of each gift on the date made. "The Oregon Tax Court has jurisdiction to determine the correct amount of the deficiency [if any], even if the amount so determined is greater or less than the amount of the deficiency as to which notice has been mailed by the director [of the Department of Revenue], and even if determined upon grounds other or different from those asserted in the notice. * * *" ORS 119.270(1).

The parties have stipulated and filed with the court, under date of June 27, 1974, a list of the gifts at issue, the date of each gift, the values thereof as reported by the plaintiff on his timely filed Oregon gift tax returns, and the values as determined by defendant.

By agreement of counsel, the two cases were consolidated for trial.

With the exception of the gifts designated 1970(a) (the donor's vendor's interest in the contract of sale of a shopping center in Corvallis) and 1970(b) and (c) (unimproved real property in the City of Corvallis), the gifts involved timber and timberland (including immature forest growth, commonly designated "reproduction"). Only gifts 1969(h) and 1970 (n) were of timber only. The parties had adopted the land class and the forest class designation of immature or reproduction timber, as determined by the defend-

ant, and stipulated agreement with the classification of merchantable timber and the volume thereof as determined by the defendant (as set forth in joint Exhibits 19-D, 20-E, and 21-F) for the purposes of these suits.

The true cash value of the gifts must be determined in each instance as of the date of the gift. This simply stated proposition, with respect to the timber and timberlands, actually involves a highly complex task, commonly entrusted to specialized, extensively trained, experienced appraisers of forest land and timber.

██ All property valuation contains aspects of personal judgment but timber valuation may well lead all other categories in this regard. Although the parties agreed to use the defendant's land classes and timber inventory, thus eliminating the otherwise basic requirement of timber cruising, many important details were left for judgments as to which reasonable, able appraisers can differ.

As to merchantable timber, timely "comparable sales" were available and used but since every logging show involves variable conditions, the log market conversion return was utilized by the trained appraiser as a method of valuing stumpage. Judgment must be exercised as to the reliability of available price data on logs in the pond and the costs of getting the logs to the pond; i.e., the price paid for falling, limbing, bucking, yarding, loading, scaling and hauling. These figures must then be adjusted in accordance with the appraiser's judgment to variables in the subject timber, including its size and density, the topography of the site, its accessibility, roads, and distance from market. All of these considerations involve the exercise of skilled judgment and are in addition to numerous latent questions which were eliminated by the

parties' stipulations of timber inventory and classification.[1]

The appraisal of forest land and the immature timber thereon raises other difficulties. The willing buyer of such property is considering stumpage in a more or less distant point in time, not the cutting of timber in the near future. Consequently, additional judgmatical variables are implicit in the transaction. There are fewer sales of this type than of stumpage, increasing the appraiser's difficulties.

An impressive array of professional timber appraisers was presented as witnesses in this suit. Messrs. Larson, Lewis, Feiss, Henze and Wakefield testified on behalf of the plaintiff. (None defended the plaintiff's values as submitted on the gift tax returns and listed in the two complaints. None reached values as high as those pleaded by defendant.) Each of these witnesses had utilized the stipulated acreages, land classes, descriptions of species, and timber volumes, but had acted separately and independently in determining values for each parcel as to which they testified. (No one timber appraiser appraised every gift of forest land and stumpage.) With few exceptions, they had inspected, particularly for this case, each parcel of the land involved. Each of the witnesses is a veteran appraiser, with academic degrees in forestry and many years of practical experience in most

[1] "Human errors will be present as long as timber is measured. If the errors due to carelessness and lack of experience in determination of length, diameter, and defect of trees and logs were reduced to a minimum, there would still be other errors in the measurement systems. These include selection of inappropriate volume tables or equations, incorrect determination of form class or utilization limits, wrong choice of breakage deduction, use of incorrect conversion factors, selection of inadequate sampling intensity for variable populations, and a host of other erroneous decisions." David Bruce and Robert W. Cowlin, *Timber Measurement Problems in the Douglas-Fir Region of Washington and Oregon.* U.S. Dept of Agriculture, Forest Service, USFS Research Paper PNW-55 22 (Feb 1968).

types of forest activity, including timber and forest land appraisal, for the federal and state governments and for private industry.

The plaintiff's timber experts, in the regular course of their vocation, often appear to be retained by their clients to make an appraisal of specific stumpage (and, more rarely, of forest lands) for the purpose of producing a figure on which a client can reasonably rely for bidding or making an offer, with the expectation of realizing a profit. The appraiser is not required to defend his value to the client as he is expected to do as a witness in court. (With each transaction, he adds to his experience the knowledge of what actually transpired in the particular situation, and profits accordingly.) The client's acceptance of a conclusion without detailed supporting data may explain why plaintiff's able witnesses varied greatly in their ability to explain in court the procedures followed by them. In many instances, they gave more general answers to questions than the court, as a trier of fact, would wish.

█ The court has been required to choose among the witnesses and it has been most influenced by those who, through their testimony, showed the greatest insight in the processes involved and depicted most explicitly and cogently their methods and reasoning. The court has discretion, in the first instance, to pass upon the qualifications of the expert witnesses called by the parties and to weigh the credibility of their testimony. *Astoria Plywood Corp. v. Dept. of Rev.,* 258 Or 76, 87, 481 P2d 58 (1971). An expert witness is expected to give a satisfactory explanation of the methods by which he arrived at his opinion and the basis for any formula used by him. *Chicago and North Western Railway Co. v. Hillard,* 502 P2d 189, 192 (Wyo 1972); *American Sav. Life Ins. Co. v. State ex*

*rel. Herman,* 13 Ariz App 336, 339, 476 P2d 680, 683 (1970).

The defendant's principal witnesses were Messrs. Eubanks, Lorenz and Hanneman, employees of the Department of Revenue's Timber Section, each a graduate forester with many years of experience in the field. There is no question of their expertise.

Each of these expert witnesses, for plaintiff and defendant, without exception, impressed the court with his ability, his frankness, sincerity and honesty, and his patience during lengthy questioning. Nonetheless, the burden placed upon the court to determine the value of the subject gifts has been a heavy one, because of divergence of the experts as to the value of specific parcels of property on the day of the gift. Apart from the donor's allegations of value (which, in retrospect, are astonishingly low) and the defendant's (which are the highest), in some instances the plaintiff's five experts had a deviation as great as 100 percent. In other specific instances, acting independently, the same witnesses achieved closely similar values.

In this situation, since averaging gives meaningless figures where true cash value is sought, the court must weigh the work of each appraiser, in a process similar to that used in the correlation of the three traditional approaches to value. (*See* American Institute of Real Estate Appraisers, *The Appraisal of Real Estate,* 373-374 (5th ed 1967).) Each expert has given an indication of value. The court must judge the reliability of the value estimate on the basis of the apparent adequacy or inadequacy of the pertinent data utilized by the witness in his testimony, and the apparent care with which he carried out his stated procedures, as shown in his examination and cross-examination as a witness. This leads to another subjective judgment, this time on the part of the court. It is contemplated by ORS 305.427.

As its first step, after careful study, the court has set aside the testimony presented on behalf of the Department of Revenue. It does not appear to meet the requirements of the present case, as can be readily understood by reviewing the lengthy testimony of Messrs. Eubanks, Lorenz and Hanneman, assisted by Mr. Bateman. The record is clear that the Department of Revenue has the duty to inventory and appraise all the forest land and merchantable timber west of the summit of the Cascade Mountains, for ad valorem tax purposes, as required by ORS 321.605 to 321.680, the Western Oregon Ad Valorem Timber Tax Law. To meet the requirements of this act, the department has set up an elaborate system of data gathering and retrieval, with men in the field who do their best to gather specific information relating to every aspect of cost and value in each area containing common competitive markets for the forest products. Effort is made to keep up to date the complete reappraisal of all forest lands and the timber thereon which was originally made in 1964 on each 40-acre parcel held by the 40,000 to 50,000 timber owners in Western Oregon, showing the class of land, class of reproduction timber and class of merchantable timber. All of this effort is for the purpose of reporting to the respective county assessors the ad valorem tax values for timberland and merchantable timber as of the January 1 preceding each fiscal tax year. It is not particularly designed for gift tax purposes.

When members of the Gift Tax Unit of the Department of Revenue sought forest land and merchantable timber values for the subject gifts as of the date of gift, they turned to the Timber Section of the Department of Revenue for the necessary information. The values set out in the defendant's answers to the complaints were based on the data in the defendant's timber tax files, recomputed as necessary for adjust-

ment to the date of gift. At the trial, the defendant's witnesses sought to justify the values given by the Timber Section by a review of its methods and sources of data.

In this particular instance, the procedures of the defendant's Timber Section, applied to gift taxes, although based on a wealth of data, did not impart conviction. As one of counsel for plaintiff stated:

> "In summary, defendant's mechanical approach to valuation of the timber and timberlands, which ignores the actual expenses in harvesting the timber on the Starker tracts, may have some justification in the property tax field where practical tax administration might require a generalized approach and where rough equality among taxpayers is sought, but it has no justification in contested gift tax cases, where the question presented is solely and clearly the question of the true cash value of the property given, to be determined as of the date of gift. * * *"

The defendant's team system of appraisals contains inherent weaknesses in specific applications which were revealed in the testimony. For example, it was ascertained that the inventory of merchantable timber upon particular tracts was not always commensurate with that to be found by a potential logger. For example, Mr. Lewis, plaintiff's witness, describing gift 1969 (d), the Bull's Bag tract, pointed out that the expert's logging methods would differ from those apparently contemplated by the defendant, inasmuch as there were scattered individual trees which would be worthy of the logger's attention, not included in the stipulated inventory, but significant to the practical aspects of the logging set-up. Again, in the case of gift 1969 (e), the Pala Mountain tract, the defendant's chief witness admitted that he had not been on the land and that he did not know that it lacked roads and was a particularly difficult and potentially expensive

logging show because of access, need for bridges, and potential difficulties in yarding logs.

It should be noted and understood that the court's observations in these two gift tax cases contain no judgment upon the defendant's work in timber valuation for ad valorem tax purposes. It may well be, as Mr. Eubanks testified, that "* * * for a mass appraisal system that we must conduct, * * *, our system is very accurate. * * *" See *Bump v. Dept. of Rev.,* 4 OTR 156 (1970).[2] Each decision by the court must depend, of course, upon the preponderance of evidence as found in that particular case. ORS 305.427. A given approach to value may succeed in one instance and fail utterly in another. See *Westbrook et al v. Dept. of Rev.,* 5 OTR 590 (1974).

After careful study of the testimony of the five expert forest appraisers presented by the plaintiff, with their numerous variations in procedural detail and values, the court finds the work of Mr. Lewis to be most convincing because of his great personal experience, familiarity with the subject property, and his clear and detailed description of his techniques, procedures and calculations. In those cases where Mr. Lewis did not appraise a specific gift of timber or timberland, reliance has been placed upon the determinations of Mr. Henze (a conservative appraiser whose discussion of the principles relating to the outright purchase of forest lands, including reproduction, was particularly illuminating and convincing). In most instances, the work of Mr. Wakefield was closely corroboratory of the work of Mr. Lewis. Relatively, Mr. Larson was not as apt in his explanation of background matters, technique, procedures and the like. Mr. Feiss, a man of integrity and experience, alone adopted an approach, utilizing Bureau of Land Man-

---

[2] A computer format for mass appraisals of timberland is described in 9 Assessors Journal 45 (No 4, Jan 1975).

agement sales, without making a conversion of short logs to long logs (the measure used by all the other witnesses and apparently necessary under the stipulation to obtain comparability). His explanation of a personal formula developed by him was incomplete.

Much more could be added to the foregoing statements in an effort to reveal more fully the court's mental processes in forming its judgment. Many more points elicited in a rather lengthy proceeding could be noted. The time and pages consumed would not justify the addition, since each interested person can only make a reasonable judgment on the basis of the total record and not from this opinion.

In the paragraphs below, the court's decisions as to specific gifts are given in the order followed in the parties' stipulation.

[For budgetary reasons, this reported case omits the lengthy property descriptions and values ascribed because they add little to the *ratio decidendi*.]

The defendant's notices of deficiency in gift taxes (Gift Tax File No. G-73015) for years 1969, 1970 and 1971 shall be set aside and held for naught and letters of assessment in conformity with this decision shall be immediately issued by defendant to the plaintiff, with credit given for gift tax heretofore paid and with statutory interest on the balances.

The gift tax is self-assessed, pursuant to ORS 119.065. The values of the gifts submitted by plaintiff (a former professor of forestry) are so much lower (65 percent) than the true cash value determined by the court, based on the testimony of plaintiff's own witnesses, that it can be said that the plaintiff did not prevail in this cause in such degree as to justify the award of statutory costs and disbursements. The de-

fendant was much closer to the judicial determination than the plaintiff. The court, exercising its discretion under ORS 20.030, directs that each party shall bear his or its own costs.