**Nora V. VASSOS, Administratrix and Personal Representative of the Estate of Gus Vassos, Appellant (Plaintiff),**

v.

**Louis J. ROUSSALIS, M.D. and John Corbett, M.D., Appellees (Defendants).**

No. 5394.

Supreme Court of Wyoming.

March 25, 1981.

Terry W. Mackey, Cheyenne, and John Hursh, Riverton, for appellant.

Joseph E. Vlastos, of Vlastos & Reeves, Casper, for appellee Louis J. Roussalis, M.D., and William S. Bon, of Schwartz, Bon & McCrary, Casper, for appellee John Corbett, M.D.

Before ROSE, C. J., and McCLINTOCK, RAPER, THOMAS and ROONEY, JJ.

ROONEY, Justice.

Appellant-plaintiff instituted an action for the wrongful death of Gus Vassos, alleging that the death was caused by the negligent diagnosis, care and treatment rendered by appellees-defendants (medical malpractice). The trial court granted appellees' motion for summary judgment, finding that the affidavits submitted by appellant's witnesses contained "statements of legal conclusions" and were insufficient "to overcome detailed factual statements" in the affidavits of appellees' witnesses "that there was no negligence." Appellant appeals from the summary judgment.

We reverse and remand the case inasmuch as we agree with appellant's position on the following issue presented by her on appeal:

"THE AFFIDAVITS APPENDED TO APPELLANT'S OPPOSITION TO SUMMARY JUDGMENT RAISE A SUBSTANTIAL FACTUAL ISSUE AND ALONE ARE SUFFICIENT TO DEFEAT SUMMARY JUDGMENT." [1]

In support of their motions for summary judgment, appellees submitted affidavits of R. Brent Gooder, M.D., and Harry B. Durham, M.D. After setting forth his medical background to establish his competency to

---

1. Our holding makes it unnecessary to consider the other two issues presented on this appeal and worded as follows:

"A GENUINE ISSUE OF MATERIAL FACT IS APPARENT IN THE RECORD AND PRECLUDES SUMMARY JUDGMENT." (The record items referred to are depositions and answers to interrogatories. The issues formed by the affidavits are not altered thereby.)

"THE TRIAL COURT ERRED IN GRANTING SUMMARY JUDGMENT BECAUSE APPELLEES, WITH THE AFFIDAVITS OF DRS. GOODER AND DURHAM, FAILED TO MEET THEIR BURDEN OF DEMONSTRATING THE ABSENCE OF A MATERIAL FACT ISSUE."

testify in the premises, Dr. Gooder's affidavit reads:

"3. Affiant has been requested to and has reviewed the medical and hospital records pertaining to Gus Vassos, deceased, and has also read the deposition given by Louis J. Roussalis, M.D., one of the defendants in the captioned litigation.

"4. Affiant is familiar with the standard of care applicable to physicians practicing in the Casper, Wyoming community during the Spring and Summer of 1976 and is also familiar with the standard of care applicable to members of the medical community engaged in the practice of general medicine and/or family practice during the Spring and Summer of 1976.

"5. That based upon the symptoms and signs indicated and noted in the medical records and as set forth in the deposition of Louis J. Roussalis, M.D., particularly that relating to the right upper quadrant of the abdomen of the deceased, the initial diagnosis of acute gastritis or acute cholecystitis was in my judgment and opinion appropriate. Further, upon admission of Gus Vassos, deceased, to the Natrona County Memorial Hospital, the appropriate diagnostic test and studies and procedures were requested and performed and obtained. The care and treatment rendered by Louis J. Roussalis, M.D., conformed to the standard of care applicable to medical cases such as this and included therein obtaining the consultation of and from John Corbett, M.D.

"6. As indicated by the materials examined by affiant, surgery was performed the early evening of June 10, 1976, and thereafter the management of Gus Vassos, deceased, was primarily that of John Corbett, M.D.; however, it is well within the applicable standard of care for the initial physician, the family practitioner or general practitioner, to continue to follow the care and treatment rendered to a patient such as Gus Vassos, deceased and to assist the surgeon in any way possible relative to the continuing care and treatment to be rendered to such a patient.

"7. Affiant has reviewed the records and material indicated above and affiant knows of no negligent, careless and wrongful act or omission by Louis J. Roussalis, M.D., occurring at any time in the care and treatment of Gus Vassos, deceased. Affiant is of the opinion that the care and treatment rendered by Louis J. Roussalis, M.D., and all others indicated in the medical records examined, was performed within the exercise of that degree of care, skill and learning ordinarily possessed and exercised by physicians practicing in this community, or similar such communities, during the Spring and Summer of 1976. Further, affiant is of the opinion that based upon the examination of the materials indicated above, the care and treatment rendered to Gus Vassos, deceased, was in accordance with the degree of skill, learning and care ordinarily possessed and exercised by hospitals, medical personnel, including physicians and surgeons practicing in Casper, Wyoming at the time of said care, treatment and procedures."

After setting forth his medical background to establish his competency to testify in the premises, Dr. Durham's affidavit reads:

"2. That he has read the deposition of Dr. Corbett taken June 18, 1979 and has read and studied copies of the Natrona County Memorial Hospital records, identified, referred to and used in the depositions of doctors Corbett and Roussalis which are referable to the care and treatment of Gus Vassos from June 6, 1976 to August 16, 1976.

"3. That based on such records and depositions he is of the opinion that the procedures used, diagnoses and judgments made and the care and treatment rendered by Dr. Corbett were in accordance with usual, ordinary and medically accepted standards of medical practice prevailing at the time in Casper, Wyoming or other communities. All of such procedures, diagnoses, judgments, care and treatment by Dr. Corbett appear to have been made and performed with the exercise of the degree of care, skill and

learning ordinarily possessed and exercised by physicians and surgeons practicing in Casper and other communities.

"4. Your affiant has known Dr. Corbett professionally for over 15 years and is acquainted with his knowledge, skill and ability as a general surgeon. In his opinion, Dr. Corbett is and was at the time relevant, a skilled and able surgeon, and is and was possessed of that degree of skill and learning commonly possessed and exercised by other members of his profession who practice in the Casper area or other areas of which your affiant has knowledge.

"5. That the records and depositions do not disclose any condition or event which he would consider resulted from neglect or failure to use reasonable care on the part of Dr. Corbett."

In opposition to the motions for summary judgment, appellant submitted the affidavits of William D. Flick, M.D., and Dan B. Greer, M.D. After setting forth his medical background to establish his competency to testify in the premises, Dr. Flick's affidavit reads:

"2. I have read the depositions of Drs. Corbett, Roussalis, and Durham, and have reviewed the records, herein referred to as the chart, of the hospitalization of Gus Vassos at Natrona County Memorial Hospital, which records are identified and referred to and used in the depositions of Drs. Corbett, Roussalis, and Durham, relating to the care and treatment of Gus Vassos from June 6, 1976 to August 17, 1976.

"3. Based upon the information contained in the records, and the depositions, I am of the opinion that the care rendered by Drs. Corbett and Roussalis to Gus Vassos during the period of his hospitalization from June 6, 1976 to August 16, 1976, was not in accordance with the usual ordinary medically accepted standards of medical practice prevailing at the time in Casper, Wyoming, and other communities, and that the procedures, diagnosis, judgment, care and treatment of Dr. Corbett and Dr. Roussalis were not made

with the exercise of the degree of care, skill and learning ordinarily possessed and exercised by physicians and surgeons practicing in Casper, Wyoming, and other communities in 1976. It is my opinion that the care and treatment rendered to Gus Vassos by Drs. Corbett and Roussalis was negligent, and that the negligent treatment which was not in accordance with the standard of care required of such physicians was the cause of the death of Gus Vassos.

"4. My opinion is based upon a detailed review of the facts contained in the hospital records and the depositions of Drs. Corbett and Roussalis, which are too voluminous to be stated in this Affidavit, but which facts are contained throughout the medical records and referred to in the depositions of Drs. Corbett, Roussalis, and Durham."

And, after reciting his medical background to establish his competency to testify in the premises, Dr. Greer's affidavit reads:

"2. I have read the medical records of the Natrona County Memorial Hospital relating to the treatment of Gus Vassos from June 6, 1976 to August 16, 1976, and I have also read the depositions of Drs. Roussalis and Corbett relating to the treatment and care given by Drs. Roussalis and Corbett to Gus Vassos.

"3. Based upon the facts contained and the information stated in the above-referenced medical records and depositions, it is my opinion that the procedures used, diagnosis, and judgments made, and care and treatment rendered by Drs. Corbett and Roussalis were not in accordance with the usual, ordinary and medically accepted standards of medical practice prevailing at the time in Casper, Wyoming, or other communities. It is my opinion that the procedures, diagnoses, judgments, care and treatments rendered by Drs. Corbett and Roussalis were negligent and were not performed with the exercise of the degree of care, skill and learning ordinarily possessed and exercised by physicians and surgeons practic-

ing in Casper, Wyoming and other communities.

"4. It is my opinion that based upon the facts contained in the medical records referred to in the depositions of Drs. Roussalis and Corbett, and the facts contained in the depositions of Drs. Roussalis and Corbett that the negligent care and treatment by Drs. Corbett and Roussalis of Gus Vassos were the cause of the death of Gus Vassos."

Appellees argue that the affidavits of Drs. Flick and Greer do not factually state the standard to be used and do not set forth a factual showing to support the opinions relative to negligence. In these respects, the affidavits must be considered in the context of the case in which they were submitted—a malpractice action.

■ A malpractice action is usually a form of a negligence action. It is in this instance. Accordingly, the elements necessary to sustain a negligence action must be here proven, i. e., a duty on the part of the defendant, failure to perform the duty proximately causing damage to plaintiff. *Danculovich v. Brown*, Wyo., 593 P.2d 187 (1979). The determination of the standard of care or duty is a matter of law and not the province of the jury. *Maxted v. Pacific Car & Foundry Company*, Wyo., 527 P.2d 832 (1974). See *Diamond Management Corporation v. Empire Gas Corporation*, Wyo., 594 P.2d 964 (1979); *Matter of Estate of Mora*, Wyo., 611 P.2d 842 (1980); *Buttrey Food Stores Division v. Coulson*, Wyo., 620 P.2d 549 (1980).

■ In this case, the existence of the physician-patient relationship established the duty. The standard is fixed as that which is required of a reasonable person in the light of all the circumstances. *Fegler v. Brodie*, Wyo., 574 P.2d 751 (1978); *Hendrickson v. Heinze*, Wyo., 541 P.2d 1133 (1975). Some circumstances have acquired particular legal significance which make it possible for the court to fix a more specific standard, e. g., for owners or occupiers of land, *Buttrey Food Stores Division v. Coulson*, supra, and *Matter of Estate of Mora*, supra, for handling and dealing with a dan-

gerous agency, *Diamond Management Corporation v. Empire Gas Corporation*, supra. A malpractice contention is also one of those circumstances. The more specific standard for malpractice actions is that a physician or surgeon must exercise the skill, diligence and knowledge, and must apply the means and methods, which would reasonably be exercised and applied under similar circumstances by members of his profession in good standing and in the same line of practice. *Govin v. Hunter*, Wyo., 374 P.2d 421 (1962); *DeHerrera v. Memorial Hospital of Carbon County*, Wyo., 590 P.2d 1342 (1979); *Smith v. Beard*, 56 Wyo. 375, 110 P.2d 260 (1941); 70 C.J.S. Physicians and Surgeons § 41; 61 Am.Jur.2d Physicians, Surgeons and Other Healers § 205 (1981).

■ The skill, diligence, knowledge, means and methods are not those "ordinarily" or "generally" or "customarily" exercised or applied, but are those that are "reasonably" exercised or applied. Negligence cannot be excused on the grounds that others practice the same kind of negligence. Medicine is not an exact science and the proper practice cannot be gauged by a fixed rule. *DeHerrera v. Memorial Hospital of Carbon County*, supra; *Hundley v. Martinez*, 151 W.Va. 977, 158 S.E.2d 159 (1967); *Pederson v. Dumouchel*, 72 Wash.2d 73, 431 P.2d 973 (1967); *Brown v. Scullin Steel Co.*, 364 Mo. 225, 260 S.W.2d 513 (1953).

■ When the circumstances in which the fictitious reasonable person acts are within the common knowledge of the jury, the jury does not need assistance in comprehending the standard fixed by the court. But when such circumstances are not of such common knowledge, the jury must depend upon testimony of experts to explain the standard and thus prevent a conclusion based on conjecture and speculation. *Smith v. Beard*, supra; Annotation: Necessity of expert evidence to support an action for malpractice against a physician or surgeon, 81 A.L.R.2d 597. In other words, an additional question of fact must be answered

when the circumstances are such that the reasonable person standard is not within the common knowledge of the jury.

■ Once this question is answered and the standard is comprehended by the jury, the more usual factual question can be addressed, i. e. did the defendant's conduct conform to the standard. Here again, a simple comparison of the defendant's conduct with the standard can often resolve the matter. But, again, if the defendant's conduct is so technical as to be beyond the common knowledge of the jury, the jury will need the assistance of testimony and opinions of experts. Annotation: Necessity of expert evidence to support an action for malpractice against a physician or surgeon, supra.

In this case, appellees' motion for summary judgment was supported by affidavits from two medical practitioners. Affidavits of two other medical practitioners were filed by the appellant in opposition to the motion for summary judgment. In each instance, the affiant gave an opinion based upon a review of the medical records and depositions taken in connection with the matter.[2] The opinions were in direct conflict with reference to whether or not the defendants' diagnosis and treatment were within the applicable standard of care. Since the jury would have to rely upon these and similar opinions in determining the reasonableness of appellees' actions under the circumstances, with the weight to be given to those opinions being dependent upon the facts or data upon which based and upon the credibility given to the witness by the jury, a conflict in contemplated evidence was indicated. The affidavits referred to the applicable standard of care and inferred that such either was or was not delineated by the care afforded to the deceased. Again, a conflict of opinion was indicated.

■ The facts relative to the skill, diligence and knowledge to be reasonably exercised under the circumstances and relative to the means and methods reasonably to be exercised under the circumstances by members of the profession in good standing and in the same line of practice must of necessity be determined on the basis of opinion evidence. The same is true as to the facts relative to whether or not defendants conformed thereto. The opinion evidence contemplated to address these facts in this action is in conflict. An issue of fact exists.

Reversed and remanded for further proceedings.

McCLINTOCK, Justice, specially concurring.

Although I agree that reversal of this case is proper, I am compelled to specially concur in the result. The time-honored rule in summary judgment cases is that it is only when the moving party has established a prima facie case that the non-moving party is required to present evidence showing the existence of a genuine issue of material fact. *Moore v. Kiljander,* Wyo., 604 P.2d 204, 207 (1979). As I read the majority opinion, taken in conjunction with our recent decision in *Harris v. Grizzle,* Wyo., 625 P.2d 747 (1981) (released for publication 3/20/81), this court, in medical malpractice cases, will ignore this requirement and will test the right to summary judgment by the degree to which the plaintiff

---

2. Rule 702, W.R.E., provides:

"If scientific, technical, or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue, a witness qualified as an expert by knowledge, skill, experience, training, or education, may testify thereto in the form of an opinion or otherwise."

Rule 703, W.R.E., provides:

"The facts or data in the particular case upon which an expert bases an opinion or inference may be those perceived by or made known to him at or before the hearing. If of a type reasonably relied upon by experts in the particular field in forming opinions or inferences upon the subject, the facts or data need not be admissible in evidence."

Rule 705, W.R.E., provides:

"The expert may testify in terms of opinion or inference and give his reasons therefor without prior disclosure of the underlying facts or data, unless the court requires otherwise. The expert may in any event be required to disclose the underlying facts or data on cross-examination."

supports his case by affirmative evidence. The majority do not explain this departure and I find it ill-advised.

No one seems to quarrel with the rule which I have found best expressed by the Supreme Court of Iowa in *Daboll v. Hoden,* Iowa, 222 N.W.2d 727, 734 (1974):

> "A prima facie case of medical malpractice must normally consist of evidence which *establishes the applicable standard of care,* demonstrates that this standard has been violated, and develops a causal relationship between the violence and the harm complained of...." (Emphasis added.)

This burden is clearly with the plaintiff upon the trial of the case, but, as pointed out by the Florida Court of Appeals in *Matarese v. Leesburg Elks Club,* Fla.2d DCA, 171 So.2d 606–607 (1965), "a motion for a summary judgment puts the movant in the unenviable position of having to prove a negative, the non-existence of an issue." This statement was carried forward by the Supreme Court of Florida into a medical malpractice case, *Holl v. Talcott,* Fla., 191 So.2d 40, 43 (1966), to reach this conclusion:

> "... [B]efore it becomes necessary to determine the legal sufficiency of the affidavits or other evidence submitted by the party moved against, it must first be determined that the movant has successfully met his burden of proving a negative...."

I cannot agree with the majority that the defendant physician can meet this burden by merely offering an expert witness' bare opinion that the defendant did follow the relevant standard of care, without specifically setting forth what that standard is.

I believe that to present a prima facie case showing the non-existence of medical malpractice, the movant must first establish the relevant standard of care followed by physicians in good standing in the community under similar circumstances, and then the movant must establish that his actions conformed with this standard. *Hurtt v. Goleburn,* Del., 330 A.2d 134, 135 (1974). If the defendant cannot show that his actions

conformed to this standard, he is then required to demonstrate that the non-conformity was not the cause of the injury complained of. *Daboll v. Hoden,* supra, 222 N.W.2d at 735. Once the movant has established the non-existence of medical malpractice in this manner, then, and only then, does the burden shift to the non-moving party to demonstrate specific facts showing that there is a genuine issue of material fact.

After reviewing the affidavits and depositions submitted in the case at bar, I find that appellees have failed to establish the relevant medical standards of care that are adhered to by physicians in good standing in the community. The majority also recognize this deficiency and then go on to sanction it by concluding the expert witnesses' conclusions that defendant' actions conformed to the recognized medical standards of care were sufficient on a motion for summary judgment.

The trial judge, upon summary judgment, must determine whether the case presents a genuine issue of material fact. I find it unacceptable to conclude, as the majority have done, that the trial judge, when faced with a motion for summary judgment, must blindly accept the expert witnesses' opinion as to whether or not the defendants' actions did or did not conform to the relevant medical standard of care. This court has held that an expert witness' opinion that is not supported by facts in the record is not competent. In *Chicago and North Western Railway Co. v. Hillard,* Wyo., 502 P.2d 189, 192 (1972), this court stated:

> "... A rather general statement of the rule is that the record must show sufficient facts upon which the judgment and opinion of the expert were based. A witness who asserts an opinion ... not supported by facts is not competent, and an expert's opinion is not *substantial evidence* unless he can give a satisfactory explanation of how he arrived at his opinion...."

While I recognize that *Chicago and North Western Railway Co.,* supra, was decided before this court adopted the Wyoming

Rules of Evidence in 1978, I believe that the rule set forth in *Chicago and North Western Railway Co.*, supra, is still viable in summary judgment actions, even in light of Rule 705, W.R.E. Rule 705, W.R.E., provides:

> "The expert may testify in terms of opinion or inference and give his reasons therefor without prior disclosure of the underlying facts or data, unless the court requires otherwise. The expert may in any event be required to disclose the underlying facts or data on cross-examination."

Rule 705 does allow an expert witness to testify as to his opinion without giving his reasons; however, this rule also allows a court to require in certain instances that an expert reveal the reasons for his opinion and that on cross-examination, if requested, the expert must also reveal the reasons for his opinion. When a party is relying upon an affidavit to support a motion for summary judgment or to oppose a motion for summary judgment, I believe that a court must require the expert to specifically state the reasons upon which he based his opinion.

As the court, in *Downs v. Longfellow Corporation*, Okl., 351 P.2d 999, 1004 (1960), points out:

> " ' . . . The reasons given in support of the opinions rather than the abstract opinions are of importance, and the opinion is of no greater value than the reasons given in its support. If no rational basis for the opinion appears, or if the facts from which the opinion was derived do not justify it, the opinion is of no probative force, and it does not constitute evidence sufficient to authorize submission of the issue to the jury or to sustain a finding or verdict, * * *' ",

cited with approval by the Wyoming Supreme Court in *North Western Railway Co.*, supra, 502 P.2d at 192.

The abstract opinions presented by the affidavits in the case at bar are of no value. What is important are the facts and reasons supporting the experts' opinions, because without these facts the movant has not presented a prima facie case and, therefore, the movants have failed to meet their initial burden.

Not only am I at a loss to understand why the majority have decided to relax the requirements for summary judgment in medical malpractice cases, but I also do not know what the majority believe constitutes a prima facie case of medical malpractice. It is now sufficient for a plaintiff to merely present the bare opinion of a medical expert that the relevant medical standard was no adhered to, or is a plaintiff's burden somehow different than the burden of a party moving for summary judgment in a medical malpractice action? I find that the majority have not given the litigants and lower courts involved in a medical malpractice action any direction as to the proof required to support such an action and as a result I can easily envision a myriad of interpretations with resulting widespread confusion among the bench and bar. I think that this confusion would be avoided by a clear-cut statement requiring proof of the applicable standard, whether a trial is involved or a summary judgment is sought.

Because the movants failed to provide the relevant medical standard, I would have held that the movants were not entitled to summary judgment because they failed to present a prima facie case.